FRANK MACBOYLE LEWIS TESTAMENTARY TRUST B DATED 8/28/78, FRANCES W. LEWIS AND MARY IRELAND ORDING, TRUSTEES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20249–81.      Filed August 22, 1984.

*James M. Allen*, for the petitioner.
*Donna J. Rice*, for the respondent.

OPINION

PARKER, *Judge*: Respondent determined an income tax deficiency of $7,769 for petitioner's taxable year ending July 31, 1979, and an addition to tax under section 6651(a)[1] of $1,942. Respondent has now conceded the addition under section 6651(a). The issue for decision is whether the net capital gain deduction arising from a testamentary trust's sale of its one-half interest in a home that was the principal residence of its income beneficiary, the decedent-settlor's surviving spouse, is an item of tax preference under section 57(a)(9). This depends on whether the testamentary trust, petitioner herein, is entitled to the benefits of the exclusion created by section 57(a)(9)(D) for the sale or exchange of a principal residence.

This case was submitted fully stipulated, and the stipulated facts are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are summarized below.

Petitioner is the Testamentary Trust B created under the Will of Frank MacBoyle Lewis (decedent). Petitioner's appointed trustees are Frances W. Lewis (Mrs. Lewis), decedent's surviving spouse, and Mary Ireland Ording, one of decedent's daughters. At the time the petition in this case was filed, petitioner was situated in, and its trustees resided in, California.

Decedent died on February 26, 1977. Decedent's will directed that Mrs. Lewis' community property interest, subject to her agreement, be given to Trust A, and that decedent's share of the community property be given to Trust B, the petitioner in this case.[2] Mrs. Lewis was the sole income beneficiary of both

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during petitioner's taxable year in question.

[2] This form of disposition is a popular estate planning device for married couples, known as the community property "widow's election." Under this device, the surviving spouse consents to the decedent's disposition of the survivor's share of their community property, in exchange for which the survivor receives a life interest (usually in trust) in the decedent's share of the community property. See generally J. Price, Contemporary Estate Planning 536–556 (1982).

trusts. Mrs. Lewis had an unrestricted power to invade the Trust A corpus; her interest in the Trust B (petitioner) corpus was subject to the sole judgment and discretion of the other trustee. The other trustee could invade the Trust B corpus only after the Trust A corpus was completely exhausted and only if there was no other source of assistance reasonably available for Mrs. Lewis. Petitioner is a "simple" trust, required to distribute all its income currently. See sec. 651. Petitioner's governing trust instrument makes no mention of the treatment of its capital gains. See sec. 643(a)(3).

Included in the community property divided between the A and B Trusts was the couple's personal residence located at 245 Madrone Avenue, Belvedere, CA (the personal residence). At the time of decedent's death and at all times prior to its sale, Mrs. Lewis resided alone in the personal residence. Title to the personal residence was held one-half by petitioner and one-half by Trust A.

On November 6, 1978, petitioner and Trust A each sold its respective one-half interest in the personal residence for a total gross sales price of $465,000. On its fiduciary income tax return (Form 1041) for the period beginning August 29, 1978, and ending July 31, 1979, petitioner was required to, and did report, its one-half share of capital gain. Petitioner reported the amount of $102,984 and excluded 60 percent ($61,790.40) as its long-term capital gain deduction. Petitioner included this gain as income of the fiduciary. Petitioner listed no portion of its net long-term capital gain as allocable to the beneficiary. None of petitioner's distributions deduction of $15,771.06 on that return is attributable to petitioner's capital gains. With this fiduciary return, petitioner did not file a Form 4626, Computation of Minimum Tax - Corporations and Fiduciaries, nor did it otherwise report a minimum tax.[3] In his statutory notice, respondent determined that petitioner's net capital gain deduction from its sale of its share of the personal

---

[3]On its fiduciary income tax return (Form 1041) for its taxable year 1978, Trust A did not report any long-term capital gain from the sale of the personal residence. Mrs. Lewis reported the other one-half of the gross sales price from the sale of the personal residence on her 1978 individual income tax return. See secs. 674(a), 676(a), and 677(a); Rev. Rul. 66–159, 1966–1 C.B. 162. After taking advantage of the sec. 121 exclusion of gain ($100,000), Mrs. Lewis reported $1,194 as a net long-term capital gain (after the capital gain deduction) on her 1978 individual income tax return. Mrs. Lewis did not report a minimum tax. The correctness of these actions is not before the Court, since neither Trust A's tax liability nor that of Mrs. Lewis is at issue in this case.

residence was a tax preference item, subjecting petitioner to the minimum tax.

As in effect during the taxable year in issue, section 56(a)[4] imposed a "minimum tax," based largely upon various "items of tax preference." Various tax preference items were listed in section 57. In pertinent part, section 57(a) provided as follows:

SEC. 57(a). IN GENERAL.—For purposes of this part, the items of tax preference are—

\* \* \* \* \* \* \*

(9) CAPITAL GAINS.—
(A) INDIVIDUALS.—In the case of a taxpayer other than a corporation, an amount equal to the net capital gain deduction for the taxable year determined under section 1202.

\* \* \* \* \* \* \*

(D) PRINCIPAL RESIDENCE.—For purposes of subparagraph (A), gain from the sale or exchange of a principal residence (within the meaning of section 1034) shall not be taken into account.

Thus, a noncorporate taxpayer's net capital gain deduction is an item of tax preference unless it is gain from "the sale or exchange of a principal residence (within the meaning of section 1034)." Sec. 57(a)(9)(D).

Tax preference items are apportioned between a trust and its beneficiaries on the basis of the trust income allocable to each. Sec. 58(c).[5] The parties agree that all of petitioner's

---

[4]In pertinent part, sec. 56 provided:

SEC. 56(a). GENERAL RULE.—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of—
(1) $10,000, or
(2) the regular tax deduction for the taxable year (as determined under subsection (c)).

\* \* \* \* \* \* \*

(c) REGULAR TAX DEDUCTION DEFINED.—For purposes of this section, the term "regular tax deduction" means an amount equal to one-half of (or in the case of a corporation, an amount equal to) the taxes imposed by this chapter for the taxable year (computed without regard to this part and without regard to the taxes imposed by sections 72(m)(5)(B), 402(e), 408(f), 531, and 541), reduced by the sum of the credits allowable under subpart A of part IV other than sections 31, 39, and 43. For purposes of the preceding sentence, the amount of the credit allowable under section 38 shall be determined without regard to the ESOP percentage set forth in section 46(a)(2)(E).
[5]As in effect for the taxable year before the Court, sec. 58(c) provided:

SEC. 58(c). ESTATES AND TRUSTS.—In the case of an estate or trust—
(1) the sum of the items of tax preference for any taxable year of the estate or trust shall be

capital gain income from its sale of its one-half share of the personal residence is allocable to petitioner, the trust.[6] Petitioner correctly reported on its return the net capital gain deduction under section 1202. The parties further agree that unless petitioner's capital gain comes within the "principal residence" exception of section 57(a)(9)(D), that net capital gain deduction is an item of tax preference, properly subjecting petitioner to the minimum tax.

Section 57(a)(9)(D) defines the "principal residence" exception by explicit cross-reference to section 1034, which permits a taxpayer to defer recognition of the gain on the sale of his "principal residence." Section 1034(a) is expressly limited to "property * * * used *by the taxpayer* as his principal residence."[7] (Emphasis supplied.) While section 1034(a) has given

---

apportioned between the estate or trust and the beneficiaries on the basis of the income of the estate or trust allocable to each, and

(2) the $10,000 amount specified in section 56 applicable to such estate or trust shall be reduced to an amount which bears the same ratio to $10,000 as the portion of the sum of the items of tax preference allocated to the estate or trust under paragraph (1) bears to such sum.

The amendment to sec. 58(c) by sec. 107(a)(1)(C) of the Technical Corrections Act of 1979, 1980–1 C.B. 499, 514, 94 Stat. 222, made retroactive to the effective date of the Revenue Act of 1978, 1978–3 C.B. (Vol. 1) 1, 109, 92 Stat. 2877, does not apply to this case. The 1979 Technical Amendments were made retroactive to the effective date of the provisions of the 1978 Act they amended. Sec. 201. Technical Corrections Act of 1979, *supra*, 1980–1 C.B. at 517, 94 Stat. at 228. The 1978 amendment to sec. 58(c), sec. 421(c)(2) of the Revenue Act of 1978, was made effective for taxable years beginning after Dec. 31, 1978. Sec. 421(g), Revenue Act of 1978, 1978–3 C.B. (Vol. 1) 111, 92 Stat. 2877. Petitioner's taxable year began Aug. 29, 1978. Sec. 58(c) as amended for taxable years beginning after Dec. 31, 1978, provides for apportionment "in accordance with regulations prescribed by the Secretary." The only regulation (sec. 1.58–3, Income Tax Regs., effective Sept. 11, 1978) follows the Code provision quoted above.

[6]Generally, a trust computes its taxable income in the same manner as an individual. Sec. 641(b). A trust is entitled to deduct its distributions to its beneficiaries, to the extent of its "Distributable Net Income" (DNI). Secs. 651, 661. Generally, a trust's DNI does not include its capital gains unless they are:

(1) Allocated to income under the terms of the governing instrument or local law by the fiduciary on its books or by notice to the beneficiary.

(2) Allocated to corpus and actually distributed to beneficiaries during the taxable year, or

(3) Utilized (pursuant to the terms of the governing instrument or the practice followed by the fiduciary) in determining the amount which is distributed or required to be distributed.

Sec. 1.643(a)–3(a), Income Tax Regs.; sec. 643(a)(3). The trust instrument governing petitioner makes no mention of capital gains, and in the absence of contrary direction, California trust law allocates petitioner's capital gains to corpus. Cal. Civ. Code secs. 730, 730.03(b)(1) (West 1982). None of petitioner's distributions were out of its capital gains. Consequently, since none of the capital gains are part of petitioner's DNI, such gains are fully allocable to petitioner under sec. 58(c). See sec. 1.58–3(b), example (2)(a), Income Tax Regs. Likewise, petitioner is entitled to.the entire net capital gain deduction. Sec. 1202(b). Thus, petitioner correctly reported on its fiduciary return the entire capital gain from the sale of its one-half share of the personal residence and correctly deducted the entire net capital gain deduction ($61,790.40) on its return.

[7]Sec. 1034(a) provided:

rise to much litigation over whether or not a particular residence was the taxpayer's *principal* residence, necessitating a facts and circumstances type of inquiry, the decided cases have uniformly required actual use and occupancy by the taxpayer in the sense of living in the house on a regular day-by-day basis.[8] Petitioner, a trust, did not and indeed could not actually use the house as a principal residence, and petitioner does not seriously suggest otherwise. Instead, petitioner argues that Mrs. Lewis' use of the personal residence may be imputed to petitioner to invoke the exception of section 57(a)(9)(D). We disagree.

To whatever extent California trust law treats Mrs. Lewis, who is only an income beneficiary of Trust B, as the "equitable" owner of the corpus (the deceased-husband's community property interest in the personal residence), such a classification is not determinative in this proceeding. State law creates property rights, but Federal law governs "what interests or rights, so created, shall be taxed." *Morgan v. Commissioner*, 309 U.S. 78, 80 (1940); *Lyeth v. Hoey*, 305 U.S. 188, 194 (1938). In this case, "the taxpayer" is petitioner, a trust, not Mrs. Lewis. Sec. 7701(a)(1), (14).

The parties have not cited to us, nor have we found, any case squarely on point. We will consider the two revenue rulings and one somewhat analogous case discussing those rulings that the parties have relied upon in their briefs.

In Rev. Rul. 54–583, 1954–2 C.B. 158, a trust was denied nonrecognition under the predecessor of section 1034 even though its income beneficiary had used both the old and new properties as her principal residence. This ruling was premised upon the fact that the trust and not the beneficiary was the taxpayer, and the ruling concluded that "the trust cannot qualify as a person who used the property as a principal residence." Rev. Rul. 54–583, *supra*, 1954–2 C.B. at 159. In Rev. Rul. 66–159, 1966–1 C.B. 162, section 1034 nonrecognition was

---

SEC. 1034(a). NONRECOGNITION OF GAIN.—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 18 months before the date of such sale and ending 18 months after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

[8]See *King v. Commissioner*, 72 T.C. 349, and cases cited at 355 (1979); *Aagaard v. Commissioner*, 56 T.C. 191 (1971); *Houlette v. Commissioner*, 48 T.C. 350 (1967).

allowed where a trust whose income was taxable to its grantor under section 676(a) exchanged old property for new property, both of which the grantor used as his principal residence. The rationale under this ruling was the general policy of the grantor trust rules to treat an item charged to the grantor under section 671 "as if it had been received or paid directly by the grantor." Rev. Rul. 66–159, *supra*, 1966–1 C.B. at 163.

In *Davies v. Commissioner*, 54 T.C. 170 (1970), we noted with approval the dividing line drawn by these two rulings as to when a trust will be recognized or disregarded for purposes of section 1034. In *Davies*, we denied section 1034 rollover treatment to a taxpayer, a grantor and beneficiary of an Illinois land trust, who had lived in the building sold by the trust. We stated (54 T.C. at 176):

> The Illinois land trust was an entity that enabled petitioner to treat her apartment as business property from which she derived substantial tax benefits not available to taxpayers who are the owners of their personal residences. * * * property which was a residence in petitioner's hands was business property when held by the land trust. That entity came between petitioner and her property, changing her tax treatment of the property. It cannot be ignored now. This view is consistent with the distinction made in Rev. Rul. 66–159, *supra*, and Rev. Rul. 54–583, *supra*, between trust entities which affect income tax liability and those which do not. * * *

The instant case is slightly different factually. It is different from Rev. Rul. 54–583, *supra*, in that Mrs. Lewis had an ownership interest in the personal residence before the trust acquired title, but her community property interest went into Trust A, whereas Trust B, petitioner herein, had as its corpus the deceased husband's community property interest in the family residence. The instant case is also slightly different from *Davies v. Commissioner*, *supra*, in that the personal residence does not appear to have been business property of the trust. Nonetheless, we think the result should be the same. While we found it unnecessary in *Davies* to determine whether the Illinois land trust was to be treated as a partnership rather than a separate taxable entity, here there is no question that petitioner is a separate taxable entity. We are unpersuaded by petitioner's argument, relying upon Rev. Rul. 66–159, *supra*, that Mrs. Lewis should be treated as a quasi-grantor of Trust B. Mrs. Lewis was not petitioner's grantor, particularly as to petitioner's one-half share of the family residence since that

was her husband's community property interest, not hers.[9] And since Mrs. Lewis had unrestricted control over Trust A and could have consumed the entire corpus of Trust A, she cannot be said to have furnished any consideration for her life income interest in Trust B. See note 10. We do not think that her interests in petitioner, whatever they may be under California law, would cause her to be treated as an owner under section 678(a).

Respondent concedes, and we agree, that section 57(a)(9)(D) would have applied had Mrs. Lewis received decedent's community property interest outright. We disagree, however, with petitioner's argument that Mrs. Lewis' interest in petitioner is so similar to outright ownership that it should be accorded similar tax treatment. Mrs. Lewis received only a life income interest in petitioner. Although she may receive discretionary payments out of corpus, she has no power over the decision to invade corpus. Mrs. Lewis has no say over disposition of the corpus at her death, and, because of a spendthrift clause (art. VI, sec. I), she also has no power to dispose of her income interest before she receives it. Such a limited interest is hardly the equivalent of outright fee ownership.

There are also tax consequences that follow from the creation of petitioner, including the income-splitting and deferral that result from the interposition of the trust, a separate taxpaying entity, not to mention the exclusion from Mrs. Lewis' gross estate of her deceased husband's community property share of the personal residence.[10] Such benefits

---

[9]Under Rev. Rul. 66–159, 1966–1 C.B. 162, the grantor of that trust who kept too many strings, for purposes of the grantor trust rules, was accorded a tax benefit (nonrecognition of gain on sale of principal residence) rather than the detriment ordinarily incurred when the grantor trust rules become applicable (liability for income tax). If petitioner and Mrs. Lewis were to be allowed this benefit of a "principal residence" exclusion by virtue of characterization under secs. 671–678 as a grantor trust, they should likewise be subject to the detriments that flow from such status. Indeed, the logic of petitioner's argument would require that all of the gain from the sale of the personal residence be taxed to Mrs. Lewis. Petitioner does not claim that it overpaid its taxes by erroneously including its share of gain from the sale of the personal residence. Petitioner seeks only to escape application of the minimum tax.

[10]One of the primary tax benefits of the community property widow's election is that the surviving spouse is generally treated as a purchaser of the life interest she receives in her deceased spouse's share of the community property, allowing her an amortization deduction for that cost over her remaining life expectancy. See *Estate of Christ v. Commissioner*, 480 F. 2d 171 (9th Cir. 1973), affg. 54 T.C. 493 (1970); *Gist v. United States*, 296 F. Supp. 526 (S.D. Cal. 1968), affd. 423 F. 2d 1118 (9th Cir. 1970). Whether by design or otherwise, it appears that the unrestricted power decedent gave Mrs. Lewis over the A Trust precluded her from treatment as a purchaser—since she may well consume the entire corpus of the A Trust, attributable to *her* community property share, there may well be no remainder, so she has not given up anything in exchange for the life

would not arise had Mrs. Lewis received decedent's community property outright. Petitioner's complaint of exaltation of form over substance is somewhat disingenuous, since the tax consequences it now seeks to avoid are the result of a form chosen by its settlor, a form usually chosen, at least in part, for tax reasons. See J. Price, Contemporary Estate Planning 536–556 (1982).

We find nothing in the legislative history of section 57(a)(9)(D) to support petitioner's claim that Congress intended to exempt a trust in petitioner's position from the minimum tax. Section 57(a)(9)(D) was enacted in conjunction with a provision liberalizing section 121, the one-time $100,000 exclusion of gain from the sale of a principal residence. See H. Rept. 95–1800 (1978), 1978–3 C.B. (Vol. 1) 521, 592–594. The general purpose of this remedial legislation was to mitigate the effects of inflation where a taxpayer sold his principal residence, and the obvious focus of these relief provisions was the individual taxpayer. See H. Rept. 95–1445 (1978), 1978–3 C.B. (Vol. 1) 181, 308; S. Rept. 95–1263 (1978), 1978–3 C.B. (Vol. 1) 315, 494. Mrs. Lewis has already received the benefit of this $100,000 exclusion with respect to *her* community property interest in the personal residence. See note 3. It also appears that both petitioner and Mrs. Lewis received the benefit of a basis step-up under section 1014. See sec. 1014(b)(6). Nothing in the legislative history of section 57(a)(9)(D), remedial legislation targeted for individual taxpayers, would support granting petitioner the further benefit of exemption from the minimum tax.

Petitioner is the taxpayer in this case, not Mrs. Lewis. There is simply no basis in the facts or the law for imputing to petitioner Mrs. Lewis' use of the personal residence. The personal residence was not "used by the taxpayer as his principal residence" within the meaning of section 1034, and therefore petitioner's share of the gain from its sale is not exempted by section 57(a)(9)(D) from the minimum tax.

Except for respondent's concession as to the addition to tax,

*Decision will be entered under Rule 155.*

interest she received in her husband's share of the community property. See J. Price, *supra* at 540, 547–553.