T.C. Memo. 1997-101


UNITED STATES TAX COURT


ALLIED MARINE SYSTEMS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RICHARD M. GIBBONS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10508-95, 10509-95.    Filed February 27, 1997.


<u>Mark E. Kellogg</u> and <u>William F. Krebs</u>, for petitioners.

<u>Susan T. Mosley</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Chief Judge</u>:  In these consolidated cases, respondent determined deficiencies in, additions to, and a penalty on petitioners' Federal income taxes as follows:

Docket No. 10508-95

| Year | Deficiency |
|------|------------|
| 1988 | $     0 |
| 1989 | 4,796 |

Docket No. 10509-95

| | | Additions to Tax and Penalty | | |
| Year | Deficiency | Sec. 6653(a) | Sec. 6661 | Sec. 6662 |
|------|------------|--------------|-----------|-----------|
| 1988 | $15,059 | $753 | $3,560 | --- |
| 1989 | 79,636 | --- | --- | $15,927 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by the parties, the issues for decision are:  (1) Whether petitioner Allied Marine Systems, Inc. (Allied), is entitled to reductions in gross income and to additional expenses for 1988 and 1989; (2) whether petitioner Richard M. Gibbons (petitioner) is entitled to additional miscellaneous itemized deductions in 1988; (3) whether petitioner received constructive dividends or wages from Allied's paying his personal expenses in 1988 and 1989; (4) whether petitioner can exclude gain under section 121 and defer gain under section 1034 in 1989; and (5) whether petitioner is liable for the additions to tax and penalty as determined by respondent.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petitions in these cases were filed, Allied maintained its principal place of business in Solomons, Maryland, and petitioner resided in Solomons, Maryland. Petitioner was born in 1932.

Allied

In 1973, petitioner retired from the Navy. While in the Navy, petitioner's primary duties were underwater construction, underwater explosives, and deep-sea diving. Prior to his retirement, petitioner formed Allied as a partnership. Allied was incorporated in 1986. During the years in issue, Allied was in the business of general waterfront construction, including constructing residential bulkheads, piers, and marinas. Allied was a cash basis taxpayer during the years in issue.

In 1988 and 1989, petitioner was president and general manager of Allied and owned 25 percent of Allied's stock. His duties included locating work for Allied, scheduling work assignments, and obtaining the requisite permits required for waterfront construction. Petitioner also used his skills as a pilot while working for Allied.

For liability insurance purposes, Allied's accounting system for receipts was divided into two portions: "services income" and "other income". Services income included moneys derived from

waterfront construction.  The other income account recorded payments for materials that were sold by Allied, loan repayments, and payments received in connection with a mortgage.  During 1988, amounts recorded as other income included $7,991 of payments received in connection with a mortgage held by petitioner and Joseph Otrompke and a $75,000 loan made by petitioner to Allied.  The source of the balance of other income deposited in 1988 is not reflected on Allied's books.

During 1988, Allied's books reflect that $2,850 of loans were made to employees of Allied.  During 1989, Allied's books reflect that $14,175 of loans were made to employees of Allied.

Although Allied paid its officers $39,790 and $42,725 in 1988 and 1989, respectively, petitioner was not paid any salary by Allied during 1988 or 1989.  Allied paid petitioner's personal expenses in the amounts of $44,855 and $35,604 in 1988 and 1989, respectively.

Allied's 1988 Schedule L, Balance Sheet, of Form 1120S, U.S. Income Tax Return for an S Corporation, set forth $75,000 as outstanding shareholder loans at the end of 1988 and $129,168 as total liabilities and shareholders' equity.  Allied's 1989 Schedule L does not set forth any specific dollar amount outstanding as shareholder loans at the beginning or end of 1989. However, for 1989, beginning total liabilities and shareholders' equity totaled $129,168, and ending total liabilities and shareholders' equity for 1989 totaled $112,746.

Airplanes

Petitioner owned the following four airplanes during 1988 and 1989:

| Airplane | Date Acquired | Date Disposed Of | Purchase Price |
|---|---|---|---|
| 1963 Piper PA30 | July 1982 | July 1989 | $ 22,500 |
| 1972 Cessna 150 | July 1986 | July 1989 | 7,500 |
| 1956 Cessna 172 | July 1989 | Not applicable | Even trade for Piper PA30 |
| 1970 Mitsubishi MU2B | July 1989 | Not applicable | 175,000 |

Petitioner's airplanes were used by him personally and by Allied as follows:

|  | 1988 | 1989 |
|---|---|---|
| Business usage (hours) | 92 | 135 |
| Petitioner's usage (hours) | 81 | 179 |
| Total hours | 173 | 314 |

During 1988, Allied's use of petitioner's airplanes was 53 percent of the total usage. During 1989, Allied's use of petitioner's airplanes was 43 percent of the total usage. During 1988, Allied paid for all operating expenses of petitioner's airplanes, including those expenses attributable to personal use. Petitioner paid at least $40,009 of airplane expenses during 1989.

Petitioner's airplanes were flown the following number of hours during the years in issue:

| Airplane | 1988 | 1989 |
|---|---|---|
| 1963 Piper PA30 | 150.0 | 96.5 |
| 1972 Cessna 150 | 22.8 | 13.9 |
| 1956 Cessna 172 | --- | 2.2 |
| Mitsubishi MU2B | --- | 201.4 |
| Aztec (rental airplane) | --- | 7.5 |

Solomons Properties Partnership

On October 24, 1985, petitioner, Richard H. Fischer, Jr. (Fischer), and Delta Financial Corporation, Inc. (Delta), entered into a written partnership agreement for the purpose of acquiring, developing, and reselling real property known as Oyster Bay, located in Lusby, Maryland. Petitioner was responsible for obtaining the necessary permits and overseeing the construction. Delta was responsible for securing financing for the acquisition and cost of developing the property. Fischer was responsible for overseeing the acquisition of the land.

Under the terms of the Solomons Properties (Solomons) partnership agreement, petitioner, Fischer, and Delta agreed that the written partnership agreement was intended to set forth all promises, agreements, conditions, and understandings among them. Each partner owned a one-third interest in Solomons. Determinations of each partner's share of income, gain, loss, credit, or allowance were to be made in accordance with the agreement. The partners agreed that legal title to partnership property would be held in the name of Solomons or in such other name or manner that would be in the best interest of the partnership. The manner of holding title to partnership property was for the convenience of the partnership, and all such property would be treated as partnership property.

In late 1985, Solomons purchased property in Calvert County, Maryland. The property included a house (the Solomons house) and

improvements. Petitioner resided in the Solomons house from 1986 until February 1989 and paid no rent. From time to time, Solomons business was conducted in the Solomons house. Solomons owned the house and pledged it, along with the other partnership property, as collateral for loans obtained by the partnership. From 1986 to 1988, Solomons purchased additional adjacent property. The total acreage acquired by Solomons was 18.9339 acres.

In February 1989, Solomons sold the 18.9339 acres of land, including the house that was occupied by petitioner, for $5,315,000. The Solomons house was destroyed by fire in February 1989.

On February 24, 1989, petitioner and another person purchased a new home in St. Mary's County, Maryland, for $158,000.

## Other Background

Petitioner prepared Allied's 1988 and 1989 Federal income tax returns. Petitioner prepared his own 1988 Federal income tax return. Petitioner's 1989 Federal income tax return was prepared by Clarkson Richard Sherwood (Sherwood), an accountant.

### OPINION

## Allied's Gross Income and Deductions

Allied contends that respondent's determination of Allied's gross income should be reduced by $2,850 and $14,175 in 1988 and 1989, respectively.

Respondent concedes that Allied's income in 1989 should be reduced by $1,700 to reflect loans to employees that were repaid during 1989. Allied's argument is that all of the loans to employees were repaid in the year that the loans were made and, thus, that Allied's income should be reduced by the total amount of the loans to employees in 1988 and 1989.

Allied's cash receipts and disbursements journals for 1988 and 1989 were introduced as evidence. None of the deposits were either identified as loan repayments or traceable to particular loans. Except for the $1,700 that was conceded by respondent, no indication is given in the journals that any other loans to employees were repaid during 1988 or 1989. Petitioner's general and uncorroborated testimony is not sufficient to prove that Allied's loans to employees were in fact repaid during the same year that they were made, and the December dates of some loans suggest otherwise. Respondent's determination regarding adjustments to Allied's income, as modified by her concession, will be sustained.

Allied also contends that respondent's determination of Allied's expenses for the operation of petitioner's airplanes should be increased by $2,000 and $14,675 in 1988 and 1989, respectively. Respondent argues that Allied is not entitled to additional airplane expenses.

For 1988 and 1989, Allied argues that it is entitled to additional depreciation deductions related to petitioner's

airplanes.  Respondent admits that amounts representing depreciation for airplanes owned by petitioner were considered in determining the amount that respondent would accept as a reasonable estimate of Allied's airplane expenses.  Respondent, however, argues that Allied is not entitled to depreciate airplanes for which it did not have the burdens and benefits of ownership.

Allied bears the burden of establishing that it is entitled to additional deductions.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), affg. T.C. Memo. 1972-133.  This includes substantiating the amount of the item claimed.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Generally, section 167 provides that there shall be allowed as a deduction for depreciation a reasonable allowance for exhaustion and wear and tear of property used in the taxpayer's trade or business or held for the production of income.  Sec. 167(a); sec. 1.167(a)-1(a), Income Tax Regs.  Traditionally, such allowance is primarily intended to provide a nontaxable fund to restore property used in producing income at the end of such property's useful life and is granted to the person who uses property in his trade or business or for the production of income and who incurs a loss resulting from the depreciation of capital that he has invested.  Helvering v. F. & R. Lazarus & Co., 308

U.S. 252, 254 (1939); Ryman v. Commissioner, 51 T.C. 799, 802 n.5 (1969).  Depreciation may generally be deducted to the extent that the taxpayer proves that he or she actually expended capital in the acquisition or improvement of the property.  Helvering v. F. & R. Lazarus & Co., supra at 254; Currier v. Commissioner, 51 T.C. 488, 492 (1968).

Allied does not deny that petitioner, not Allied, owned the airplanes, and Allied does not contend that it provided funds for the acquisition of the airplanes.  Although Allied paid some expenses of the airplanes during the relevant period, Allied has not provided any proof that it had a capital investment in the airplanes.  Accordingly, Allied has failed to prove its entitlement to any additional depreciation deductions with respect to petitioner's airplanes.

For 1989, Allied argues that, based on the cost per hour for each aircraft to which petitioner testified and the stipulated number of business hours flown, Allied must have incurred additional expenses.  Allied's position is unsupported by the record.  Respondent determined that Allied was entitled to $32,110 of airplane expenses for 1989.  Based on a concession by respondent, the allowance will be $36,360.  At trial, Allied introduced various receipts as evidence of airplane expenses.  The receipts totaled less than $16,000, and not all of the expenses were paid by Allied.  Without supporting independent

evidence, Allied's claim is not sufficient to prove its entitlement to additional airplane expenses.

Allied raised for the first time on brief its claim that it is entitled to the deductions as essentially for airplane rental expenses. Allied did not give respondent fair warning of this position; even if we were to consider this position, we would conclude that it was without merit. There is not sufficient evidence before us to establish any rental agreement or any rental payments during the years in issue.

We cannot conclude from the evidence that Allied is entitled to any additional airplane expenses in 1988 or 1989.

Schedule A Deductions

Petitioner deducted $5,482 as employee business expenses on his 1988 Form 2106, Employee Business Expenses. The parties have stipulated that the amount remaining in dispute is $5,479. On brief, petitioner conceded respondent's disallowance of $905 claimed as expenses for travel while away from home.

Petitioner did not produce any evidence at trial regarding, and did not dispute on brief, respondent's disallowance of $430 claimed as expenses for meals and entertainment. Petitioner has failed to meet his burden of proving that respondent's determination is incorrect. Rule 142(a).

The remaining items in dispute are vehicle expenses of $3,710 and parking and tolls expenses of $523.

Petitioner testified that he maintained a contemporaneous automobile log during 1988 but that the log was destroyed when the Solomons house burned down in early 1989.  In place of the original log, petitioner introduced a reconstruction of his claimed business use of the automobile.  Such a reconstruction is allowed--

> Where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures or use.  [Sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46006 (Nov. 6, 1985).]

Respondent argues that petitioner's reconstruction is not reasonable.

Petitioner's 1988 Form 2106 indicates that his vehicle was driven a total of 18,350 miles during 1988.  According to petitioner's 1988 Form 2106, 16,000 miles was business mileage, 1,500 miles was commuting mileage, and 850 miles was personal mileage other than commuting.  The reconstruction presented by petitioner indicates 16,203 miles of purported business travel.  Respondent contends that it is unreasonable to conclude that petitioner (in addition to the commuting mileage) drove only 850 personal miles during 1988, especially when petitioner has failed to offer any proof of another vehicle used for personal transportation.

We agree with respondent.  Petitioner testified that he used a reconstruction in preparing his 1988 Form 2106.  Petitioner could not recall, however, whether the reconstruction that was received into evidence was the same reconstruction that was used in preparation of his 1988 Form 2106 or when the reconstruction that was received into evidence was prepared.  If the reconstruction was not the one used in preparing the return, there is no explanation for the missing more contemporaneous record.  In his brief, petitioner acknowledges the difficulty of recalling details occurring 7 years before the trial, and a recent reconstruction would inherently be susceptible to error. We are not persuaded that the reconstruction is reasonable or reliable.

Petitioner's testimony regarding the claimed parking fees and tolls is likewise vague and unconvincing.  Petitioner's claimed parking fees were based on "an average trip".  Petitioner did not introduce any evidence or testify as to the specific number of airport fees (for landing and parking petitioner's airplanes) or to the number of vehicle parking fees that were included on his 1988 Form 2106.  Furthermore, petitioner did not attempt to reconstruct any of the claimed parking fee expenses.

Respondent's determination that petitioner is not entitled to employee business expenses will be sustained.

Allied's Payment of Petitioner's Personal Expenses

Respondent determined that Allied's payment of petitioner's personal expenses in the amounts of $44,855.00 and $35,604 in 1988 and 1989, respectively, was includable in petitioner's gross income. After a concession by respondent, the amounts remaining in dispute are $40,859 and $31,608 for 1988 and 1989, respectively. Petitioner contends that Allied's payments of his personal expenses were nontaxable loan repayments. Respondent contends that these payments were dividends or, in the alternative, wages.

At trial, the evidence that was introduced by petitioner consisted mainly of his uncorroborated testimony. We are not required to accept testimony that is improbable or vague. See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. T.C. Memo. 1969-159. Petitioner's testimony is not supported by the minimal records produced at trial and is not consistent with the contemporaneous corporate records. Allied's 1988 Schedule L, Balance Sheet, indicates that at the end of 1988 $75,000 was outstanding as shareholder loans and that liabilities and shareholders' equity totaled $129,168. Allied's 1989 Schedule L does not indicate any amount outstanding as shareholder loans at the beginning of 1989. However, beginning liabilities and shareholders' equity totaled $129,168. Ending liabilities and shareholders' equity for 1989 totaled $112,746. We conclude that Allied did not have a contemporaneous intent to

treat the payments of petitioner's personal expenses as loan repayments.

Petitioner's attempts to characterize retroactively the payments he received from Allied as loan repayments are not persuasive. See Noble v. Commissioner, 368 F.2d 439 (9th Cir. 1966), affg. T.C. Memo. 1965-84. The pattern of payments from Allied for petitioner's benefit is more consistent with constructive dividends. See Reis v. Commissioner, T.C. Memo. 1995-231; Cordes v. Commissioner, T.C. Memo. 1994-377.

Petitioner contends that Allied did not have earnings and profits from which to pay a dividend in 1988 or 1989. Respondent concedes that Allied did not make a profit in 1988. However, respondent argues that petitioner has failed to show that there were no historical earnings available in 1988. Petitioner argues that Allied was only a corporate shell between its incorporation in 1986 and 1988 and that no historical earnings could exist. Petitioner's contention is not supported by any evidence in the record. Petitioner has not met his burden of proving that Allied had insufficient earnings and profits to support the distribution of dividends, to the extent determined by respondent, during the years in issue. Truesdell v. Commissioner, 89 T.C. 1280, 1295 (1987); see Rescigno v. Commissioner, T.C. Memo. 1991-479; Malicki v. Commissioner, T.C. Memo. 1988-559, affd. sub nom. Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374 (7th Cir. 1990).

Because petitioner has failed to prove error in respondent's determination, we need not address respondent's alternative position that the payments represented wages to petitioner. We note, however, petitioner's argument:

> There is no dispute that Gibbon's payments were unique among the employees and stockholders of the Corporation. The distinction is that unlike the other employees and stockholders, Gibbons was the only one to loan the Corporation substantial sums of money, to advance on behalf of the Corporation funds for its business expenses and to provide the Corporation with the use of his depreciable equipment for the Corporation's business uses. The unique payments were in recognition and partial satisfaction of these unique activities on its behalf.

Inasmuch as petitioner was not paid any salary during 1988 or 1989, petitioner's argument suggests that he was compensated by the payments in dispute. The tax consequences to petitioner would be the same. Allied has not timely argued that it would be entitled to deduct the payments as compensation. Respondent's determination that petitioner received constructive dividends in the amounts of $40,859 and $31,608 for 1988 and 1989, respectively, will be sustained.

## Sections 121 and 1034

Respondent determined that petitioner is not entitled to exclude or to defer any gain from the sale of the Solomons house. Petitioner contends that he is entitled to exclude $125,000 of gain under section 121 and to rollover $89,667 of gain under section 1034.

Section 121 provides a one-time exclusion of $125,000 of gain from the sale of a principal residence for an individual who has attained age 55, if "during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more."  Sec. 121(a)(2) (emphasis added), (b)(1).  The parties are in agreement that petitioner met the age requirement and used at least a portion of the Solomons house as his principal residence for the requisite period.  However, the Solomons house was owned by Solomons, not by petitioner.  Thus, section 121 is not applicable to petitioner here.

Section 1034(a) provides for rollover of gain on the sale of a principal residence:

> If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 2 years before the date of such sale and ending 2 years after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

Again, the parties are in agreement that petitioner used at least a portion of the Solomons house as his principal residence and that petitioner purchased a "new residence" within the requisite period.  Respondent argues that petitioner has not substantiated the amount of the gain allocable to the portion used as a residence and that petitioner did not own the Solomons house and,

thus, cannot claim the benefit of section 1034 gain rollover. Petitioner contends that a "partner in a partnership may claim an exclusion of the recognition of gain on the sale of property titled to the partnership and used by a partner as his personal residence."

Petitioner points to Lewis Testamentary Trust B v. Commissioner, 83 T.C. 246 (1984), to support his position. Lewis stands for the proposition that an income beneficiary's use of a house owned by the trust cannot be imputed to the trust in determining the trust's tax liability under section 57(a), defining tax preferences for purposes of the minimum tax. In that case, the Court therefore concluded that the "principal residence" exclusion of section 57(a)(9)(D) was unavailable to the trust. Lewis does not strengthen petitioner's position.

Petitioner also relies on Davies v. Commissioner, 54 T.C. 170, 176 (1970), arguing that his failing to pay rents and Solomons' failing to depreciate the house indicate that the Solomons house was a residence and not business property. Petitioner's syllogism fails. The taxpayer's loss in Davies, based on a conclusion that the property in question was business property, does not suggest an opposite result here. The Solomons property (whether depreciated or not) was from time to time put to business uses. Neither the Court's dictum in Davies v. Commissioner, supra at 175, nor section 704(c), cited by petitioner, relating to property contributed to a partnership,

applies here.  The Solomons property was purchased by the partnership, not contributed to it.

Under section 1034(a), the old residence must be "sold by" a taxpayer claiming nonrecognition treatment.  The Solomons house was sold, along with the other partnership property, by Solomons, not by petitioner.  Maintaining continuity of title is a key to receiving nonrecognition treatment under section 1034.  See Starker v. United States, 602 F.2d 1341, 1351 (9th Cir. 1979).  Title to the Solomons house was held in the name of Solomons, along with the other partnership property.  Petitioner's new residence was titled in his and another's names.  No continuity of title exists here.

Petitioner argues that through an oral agreement with his partners he gained an interest in the Solomons house.  Neither of the other Solomons partners corroborated petitioner's testimony. Petitioner, Fischer, and a Delta representative, Douglass Parran, Jr. (Parran), testified that each partner had the option to receive one of the residential units to be built as part of the development.  Such an agreement would not constitute a transfer to petitioner of title in the Solomons house.  Fischer testified that petitioner's use of the Solomons house was important to the partnership during the construction phase from a security standpoint and from a convenience standpoint (petitioner was overseeing the construction).  However, petitioner, Fischer, and Parran also testified that, from the outset, Solomons intended to

destroy the Solomons house as part of the overall development plan.

Solomons treated the Solomons house at all times as partnership property, pledging it, along with other partnership property, as collateral for loans. Petitioner's claim that he gained title, equitable or otherwise, in the Solomons house is contrary to the evidence. Respondent's determination that petitioner is not entitled to exclude gain under section 121 or to defer gain under section 1034 in 1989 will be sustained.

Section 6661 Addition to Tax

Respondent determined that petitioner is liable for the section 6661 addition to tax for 1988. Petitioner bears the burden of proving that respondent's determination is not correct. Rule 142(a); Cluck v. Commissioner, 105 T.C. 324, 339 (1995). Section 6661(a) provides for an addition to tax on underpayments attributable to a substantial understatement of income tax. Section 6661(b)(2)(A) defines the term "understatement" as being the excess of the amount of tax required to be shown on the return for the taxable year over the amount shown on the return. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1)(A). The deficiency resulting from our determinations is a substantial understatement.

The section 6661 addition to tax is not applicable, however, if there was substantial authority for the taxpayer's treatment

of the items in issue or if the relevant facts relating to the tax treatment were adequately disclosed on the return. Sec. 6661(b)(2)(B)(i) and (ii). Petitioner did not present any evidence or argument that there was substantial authority for his treatment of the items in issue or that the treatment was adequately disclosed on his return. Accordingly, we conclude that petitioner is liable for the addition to tax under section 6661 for 1988.

Section 6653(a) Addition to Tax

Respondent determined that petitioner is liable for the section 6653(a)(1) addition to tax for 1988. Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Neely v. Commissioner, 85 T.C. 934, 947-948 (1985). Petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Petitioner presented neither evidence at trial nor argument on brief regarding the negligence addition to tax for 1988. Respondent's determination will be sustained.

Section 6662 Penalty

Respondent determined that petitioner is liable for the section 6662(a) penalty for 1989. Section 6662(a) imposes an accuracy-related penalty in an amount equal to 20 percent of the underpayment of tax attributable to one or more of the items set forth in section 6662(b). On brief, respondent argues that the determination of the section 6662(a) penalty should be sustained because petitioner's underpayment was due to negligence or due to a substantial understatement. Sec. 6662(b)(1) and (2). The deficiency here determined is a substantial understatement. See sec. 6662(d)(1).

The accuracy-related penalty does not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion of an underpayment and that petitioner acted in good faith with respect to such portion. Sec. 6664(c)(1). The determination of whether petitioner acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability for the year. Id. Reliance by the taxpayer on the advice of a qualified adviser will constitute reasonable cause and good faith if, under all of the facts and circumstances, the reliance by the

taxpayer was reasonable and the taxpayer acted in good faith. Id.

Based on the record, we conclude that petitioner is not liable for the section 6662 accuracy-related penalty on the portion of the underpayment related to the Solomons house. Petitioner retained Sherwood to prepare his 1989 return and both petitioner's and Sherwood's testimony indicated that petitioner provided Sherwood with all of the information regarding the Solomons house. Although petitioner's reliance on Sherwood in this regard was misplaced, we do not conclude that petitioner's reliance on Sherwood was unreasonable.

Petitioner has not shown reasonable cause or good faith for the remainder of the underpayment. Neither petitioner nor Sherwood testified as to what information petitioner provided to Sherwood regarding Allied's payment of petitioner's personal expenses. Thus, the section 6662(a) penalty will be sustained as to the remaining portion of the underpayment for 1989.

To reflect the foregoing and concessions of the parties,

Decisions will be entered

under Rule 155.